**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| ÓPTIMA SEGUROS | Case No.: 26-1267 |
| Plaintiff | |
| vs. | |
| FREEDOM DREAM LLC; RAMÓN BARQUÍN | IN ADMIRALTY: |
| Defendants | Fed. R. Civ. P. 9(h) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

**COMES NOW**, the Plaintiff, ÓPTIMA SEGUROS (hereinafter referred to as "Plaintiff" or "ÓPTIMA"), by and through the undersigned attorney, and for its *Complaint* seeking this Court's Declaratory Judgment, respectfully states, alleges and prays as follows:

## I. JURISDICTION AND VENUE

1. This is an action for declaratory relief pursuant to Title 28 of the United States Code, sections 2201-2202, in that a current controversy exists between the parties, which Plaintiff asks this Court to adjudicate and determine the rights of the parties to a contract of marine insurance which is in dispute.

2. Venue lies within the District of Puerto Rico, as this cause arises out of a policy of marine insurance issued and delivered by the Plaintiff to the Defendants, Freedom Dream LLC and Ramón Barquín.

3. This is an admiralty and maritime cause within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure, and this Court

1

has jurisdiction pursuant to Title 28 of the United States Code, section 1333.

## II.  THE PARTIES

4.    Plaintiff, ÓPTIMA, is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico, authorized by the Office of the Commissioner of Insurance to act as an insurer for various insurance lines, including ocean marine insurance, with principal place of business located at 1101 Muñoz Rivera Avenue, San Juan, Puerto Rico 00925.

5.    Defendant Freedom Dream LLC, is, by information and belief, a limited liability company organized and existing under the laws of the State of Delaware and is an Insured under OPTIMA'S policy. Freedom Dream LLC's address is 8 The Green, STE B, Dover, DE 19901 (hereinafter referred to as "Freedom Dream").

6.    Defendant Ramón Barquín is a natural person residing within the jurisdiction of this federal district court and an Insured under OPTIMA'S policy. By information and belief, his addresses are Torrimar Alto, M31, Hill Drive Road, Guaynabo, PR, 00966; 452 Ponce de León Avenue, Suite 1A, San Juan, Puerto Rico 00936 (hereinafter referred to as "Barquín").

## III.  FACTUAL ALLEGATIONS

7.    On or about July 1, 2024, Freedom Dream and Barquín submitted a Private Yacht Proposal Form to ÓPTIMA (hereinafter "Application").

8.   Based upon the information contained in the Application, ÓPTIMA issued Policy No. OYP-0002880-00, of marine insurance to Defendants (hereinafter "Policy"), covering a 65' Viking yacht, built in 1992 and named FREEDOM (hereinafter "Vessel").

9.   The Policy had an effective period running from July 3, 2024 to July 3, 2025, providing Watercraft, Tender, Trailer, Personal Effects, Watercraft Liability, Medical Payments, and Uninsured Boaters coverages, pursuant to all its terms, conditions, warranties, limitations, and exclusions.

10.   A true and correct copy of Plaintiff's Policy No. OYP-0002880-00, with the corresponding Application, is attached hereto as **EXHIBIT 1**.

11.   On or about February 11, 2026, Defendants submitted a Notification of Loss Form to ÓPTIMA alleging that on August 4, 2024, while the Vessel was in the custody of mechanic Rodney Ramos (hereinafter "Mr. Ramos"), a hose from the sanitary system located in its second floor broke while the Vessel was berthed at Marina Puerto de Rey (hereinafter "Marina") and connected to the Marina's water supply, inundating the Vessel due to the ingress of fresh water. Defendants also alleged that Sea Tow responded to mitigate possible environmental damages, as ordered by the United States Coast Guard (hereinafter "U.S. Coast Guard") and the Marina (hereinafter referred to as "Claim").

12.   Immediately after receiving the Claim, ÓPTIMA began the

3

corresponding investigation.

13.  As part of the Claim, Defendants submitted a handwritten Witness Statement Form which Barquín purportedly submitted to the U.S. Coast Guard, dated August 4, 2024. See **EXHIBIT 2.**

14.  Defendants also submitted an unsigned screenshot of a typed Witness Statement Form in Word format, allegedly from Mr. Ramos. This unsigned Form is undated and states that Mr. Ramos was the Defendants' guest at the Vessel and not a hired mechanic performing work on the Vessel. Additionally, the Form indicates that Mr. Ramos is the person who first identifies and notifies the Claim. See **EXHIBIT 3.**

15.  As part of its investigation into the Claim, ÓPTIMA obtained an invoice from Sgt R's dated June 27, 2024, detailing alleged work and repairs performed on the Vessel between June 21, 2024 and July 15, 2024. The invoice mentions repairs to the engines, including removal of valve covers, replacement of leaking gaskets, valve adjustments, removal of all hoses and lines, the rebuilding of the raw water pump, removal and replacement of corroded coolant tanks, acid flush lines, removal and replacement of exhaust manifold ends, engine corrosion clean up, paint and main support beams grind and paint, work on transmissions, toilet pump upgrades, retrofitting of two toilet pumps to vacuflush, bilge cleaning and corrosion clean of hoses clamps, installation of water pump pressure regulator, caulking og interior, removal of old

caulking from exterior of vessel, and clean tape and redo, among other repairs. **See EXHIBIT 4**.

16. Whilst investigating the Claim, ÓPTIMA obtained a Condition & Value Report of Marine Survey performed on the Vessel by Dockside Marine Surveyors on June 16 and 17, 2024. See **EXHIBIT 5**.

17. The survey contains several findings of wear and tear and lack of maintenance, including damage to the head and toilet systems. The survey also mentions that: (1) the bilge high water alarm did not power up/test sound, (2) the bilges had accumulation of oil and water, (3) there was corrosion to Vessel's interior and exterior bilge hardware, (4) the engine mounts were excessively corroded, (5) there were corroded hose clamps and cracked raw water hoses, (6) there was water intrusion around both port and starboard pilothouse doors, (7) there was excessive odor of waste in the forward bilge sump pump area and a musty smell in the forward stateroom, and (8) that there was general weathering and lifting or separation in some of the Vessel's exterior caulking and window sealants. Moreover, the survey recommended the replacement of all fuel hoses, noting that the hoses were past their recommended serviceable life expectancy and dry cracking in the hose sheathing, among others. Particularly, the survey notes:

> Dock-side hose connection in the port forward cockpit (required test/prove). It was reported to the surveyor that the fresh water dock connection could not be tested as the water lines from this connection leak. Id.

18.    Separately, ÓPTIMA became aware that the purchase price of the vessel (exact price paid by Defendants to seller), was $245,000.00. See **EXHIBIT 6**, Purchase Agreement.

19.    The Application included a question that reads as follows: "What was the purchase price of the boat (exact price paid to seller)?" See **EXHIBIT 1**, Application at page 42, item 46. To said question Defendants responded "$300k" Id.

20.    Thus, Defendants represented that the purchase price of the vessel was $300,000.00, when the Purchase Agreement actually stipulates the price at $245,000.00.

21.    Also as part of its investigation, ÓPTIMA learned that Defendants filed various insurance claims with other insurance companies related to damages sustained by vessels owned by Barquín.

22.    These accidents or losses are summarized as follows:

i.    On October 19, 2016, strong surge caused spring line to break, for which the Insured was paid $24,610;

ii.    On December 20, 2016, items were stolen from the Vessel, for which the Insured was paid $6,000;

iii.    Two claims submitted between December 2019 and June 2020 for damages and losses to Vessel as result of collision and theft occurring during February to June 2020 period, which were denied and were the subject of federal court case 3:21-cv-01096-ADC.

23.    The Application submitted by Defendants as part of the underwriting process asked "Have you or anyone who will operate your yacht had any accidents or losses (even if no insurance claim

6

was filed) in connection with any vessel you have operated, owned or was under your control?" See **EXHIBIT 1**, page 41, item 13.

24. Defendants' answer was "Yes", specifying "Loss due to hurricane Irma/María, 2017, $40k; Neighbor anchored vessel released from anchor and hit the side of our boat, 2015, $20k." Id.

25. Although the Application asked for disclosure of all losses or accidents, even if no claim was filed, Defendants concealed several insurance claims for prior losses to vessels owned by Barquín.

26. Lastly, on June 25, 2025, Defendants submitted a Private Yacht Renewal Form (hereinafter "Renewal"). See **Exhibit 7.**

27. As part of the questions to renew coverage for the Vessel for a subsequent policy period, the Renewal asked "Have you had any accident or losses during the expiring policy year (even if no insurance claim was filed) in connection with any vessel you have operated, owned or was under your control?". Id. Defendants responded "No", despite the fact that the Claim allegedly occurred on August 4, 2024. That is, within the policy period of the Policy (July 3, 2024 – July 3, 2025). Id.

28. The aforementioned are clear misrepresentations and/or concealments of material facts and violations of the doctrine of *uberrima fidei*, a firmly entrenched principle of federal maritime law, as well as violations of the terms and conditions contained in

7

the Application and the Policy.

### IV.   <u>FIRST CAUSE OF ACTION</u>

### Misrepresentation and/or concealment

29. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 31 as if set forth fully herein.

30. ÓPTIMA's Application includes a Declaration by Defendants, which reads as follows:

> I agree that all questions asked herein request material information which is indispensable for ÓPTIMA SEGUROS assessment of the risk subject of this application. Non-disclosure, concealment or misrepresentation of material facts not asked herein or incorrectly stated herein will result in the insurance being null and void from inception.
>
> I understand that if I have any doubts about whether facts would be considered materials, I should act on the side of caution and disclose them.
>
> The statements and answers provided herein are warranted by me to be true and correct. If incorrect answers are provided (either by error, omission or neglect), I will be in breach of this warranty and the policy, if issued, will be void from inception. I understand I must fill every question and that no question should remain unanswered. If a question if inapplicable, I am aware that I must write "N/A" to so indicate. I agree that this declaration shall form the basis of the contract of insurance between me and you. I also agree that if the policy is issued, it was issued by you based upon and in reliance of the truthfulness and completeness of the answers provided herein. <u>See</u> **EXHIBIT 1**, page 43.

31. Moreover, the Policy states: "The declarations, application and the applicable endorsements are an integral part of this policy."

8

32.  Also, the Policy contains the following warranty in the General Conditions and Warranties Which Apply to All Coverages under this Policy:

1. Application is part of policy
The Application and the information provided and represented therein by you and/or your authorized representative forms part of this policy and is incorporated herein by reference. This policy was issued based upon and in reliance of the representations made by you or your representative in the Application. The information provided in the Application is <u>warranted</u> by you to be true and correct in all respects. Any changes to the information provided therein shall be reported to us within seven (7) days of you becoming aware of same. If the name insured has, before or after a loss made a false statement or representation with respect to this insurance or has concealed or misrepresented any fact or circumstance relating to this insurance, this policy shall be void and without effect. The false statement or representation or concealment need not be related to the damages or loss claimed in order to void the entire policy.

33.  Defendants had an obligation to disclose all material facts during the underwriting process.

34.  The underwriter does not need to investigate or verify the answers provided in every application in order to confirm its correctness. That is, the underwriter can rely on the information provided in the application, since the principle of *uberrimae fidei* (utmost good faith) imposes a duty upon the insured to disclose all material facts known to him.

35.  The insured also has a contractual obligation to provide truthful answers and information during the investigation of the Claim.

36.    The misrepresentations and or/concealments described at ¶¶19-28 constitute false statements or representations of material facts with respect to this insurance and void the Policy *ab initio* as per the terms of the Policy and the doctrine of *uberrima fidei*.

37.    Furthermore, the Application includes several direct questions, to which Defendants responded with information categorically different and/or contrary to what the investigation found. These are the questions:

> What was the purchase price of the boat (exact price paid to seller)?
>
> > "$300k"
>
> Have you or anyone who will operate your yacht had any accidents or losses (even if no insurance claim was filed) in connection with any vessel you have operated, owned or was under your control?
>
> > "Yes"; "Loss due to hurricane Irma/María, 2017, $40k; Neighbor anchored vessel released from anchor and hit the side of our boat, 2015, $20k."

See **EXHIBIT 1**.

38.    According to the Claim investigation, Defendants paid $245,000.00 to the seller. As to the prior accidents or losses, Barquín has had at least three (3) additional insurance claims relating to damages sustained to vessels owned by him.

39.    Had the underwriters known about the actual purchase price of the Vessel and the truth about the loss, accident and claim history of Barquín, they would not have insured the Vessel, or would have done so under different terms and conditions. Said

misrepresentations and/or concealments constitute a breach of Defendants' duty of utmost good faith due to the several misrepresentations, omissions and/or concealments described and it justifies the outright voiding of the Policy.

## V. SECOND CAUSE OF ACTION

### Warranty of Truthfulness

40. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 42 as if set forth fully herein.

44. As cited above, the Policy contains a warranty of truthfulness in its 1st provision under General Conditions and Warranties Which Apply to All Coverages Under this Policy which provides, in relevant part: "If the name insured has, before, or after the loss made a false statement or representation with respect to this insurance or has concealed or misrepresented any fact or circumstance relating to this insurance, this policy shall be void and without effect. The false statement or representation or concealment need not be related to the damages or loss claimed in order to void the entire policy."

45. As mentioned before, on June 25, 2025, Barquín executed and submitted the Renewal stating that he had no accidents or losses during the expiring policy year (July 3, 2024 – July 3, 2025) albeit knowing of the Claim that allegedly occurred on August 4, 2024.

11

46.   In this regard, we reference the Witness Statement Form submitted by Mr. Barquín on said date. See **EXHIBIT 2**. Therefore, after the alleged loss of August 4, 2024, Defendants concealed material facts and circumstances directly related to the Claim.

47.   The violation of this warranty of truthfulness voids the policy pursuant to its clear terms and conditions and the principle of *uberrimae fidei.*

### VI.   THIRD CAUSE OF ACTION

### Failure to provide immediate notification of the loss

48.   Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 47 as if set forth fully herein.

49.   The Policy sets forth various Duties in the Event of Loss that the Insured must comply with in the event of any loss or damage. In relevant part, the Policy provides:

> 2. Give us immediate notification of the loss with details as to how, when and where the loss occurred, the property involved, the names and addresses of any potential claimants and the names and addresses of any witnesses. Failure to do so will invalidate coverage for the loss.

50.   As mentioned before, Barquín executed a Witness Statement Form on August 4, 2024, submitted to the U.S. Coast Guard relating the Claim.

51.   Therefore, Defendants clearly had full knowledge of the Claim and alleged loss but failed to immediately give ÓPTIMA notification.

52. Defendants first notified the loss on February 4, 2026, and submitted the Notification of Loss Form to ÓPTIMA on February 11, 2026.

53. Defendants' failure to immediately notify the loss and wait more than 18 months to do so is a violation of the Insured's Duties in the Event of Loss.

54. Assuming that the Policy is not annulled based on concealment and misrepresentation as related above, Defendants' failure to give immediate notice of the loss invalidates coverage for the Claim.

## VII. FOURTH CAUSE OF ACTION

### Damage existing prior to the inception of the Policy

55. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 54 as if set forth fully herein.

56. The Policy contains the following exclusion which applies to property coverages:

> a. We will not pay for loss or damage caused directly or indirectly, in whole or in part, by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:
> […]
>
> xxi. Damage existing prior to the inception date of this insuring agreement, whether you are aware of the same or otherwise.

57. As detailed above, ÓPTIMA discovered the condition of the Vessel prior to the inception date of the Policy (July 3,

2024), from a survey report and invoice of repairs.

58.  Many of the damages claimed by Defendants in the Claim coincide with damage existing prior to the inception of the Policy as evidenced from the submitted documents.

59.  Therefore, the Claim and the related loss is excluded from coverage pursuant to exclusion xxi.

## VIII.    FIFTH CAUSE OF ACTION

### Wear and tear exclusion

60.  Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 59 as if set forth fully herein.

61.  The Policy contains the following exclusions:

    a. We will not pay for loss or damages, and any related expenses to the Insured Watercraft, Trailer and Personal Effects caused directly or indirectly, in whole or in part, which occurs gradually or suddenly, from the following perils. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss:

      i. Wear and tear including, but not limited to, wear and tear of the stuffing box sealing or packing system

     ii. Deterioration (including mold, vermin or marine life) of any kind, marring, denting, cracking, scratching, chipping, osmosis, blistering, electrolysis, mechanical breakdown (including, but not limited to, any damage to machinery as result of broken hose(s), clamp(s), filter(s) or belt(s)), electrical breakdown or derangement, corrosion, rust, wet or dry rot, inherent vice, insects or vermin, marine borers, warping or shrinkage, lack of maintenance, dampness of atmosphere or weathering.

62.  The documents reviewed by ÓPTIMA show a Vessel lacking

14

maintenance at the time of the alleged loss, with several incidences of wear and tear, deterioration, corrosion, rust, damaged and broken hoses, as detailed above.

63. Therefore, assuming the Policy cannot be annulled for concealment and misrepresentations, the Policy excludes coverage for this loss pursuant to the exclusions cited above.

## IX.   SIXTH CAUSE OF ACTION

### Loss or damage to machinery and electrical equipment

64. Plaintiff repeats and realleges each and every allegation set forth in Paragraphs 1 through 63 as if set forth fully herein.

65. The Policy contains the following additional exclusions:

iii. Loss or damage to the Insured Watercraft's machinery, including but not limited to, engine(s), transmission(s), strut(s), shaft(s), propeller(s), electrical equipment and apparatus including connections and wiring unless resulting from fire, lightning, explosion, theft, vandalism, sinking, stranding or collision with other vessel or with any natural or manmade fixed or floating object.

iv. Any loss or damage to electrical apparatus, including wiring, directly of indirectly caused by electricity, other than lightning, unless resulting from fire, lightning, explosion, theft, vandalism, sinking, stranding or collision with other vessel, or with ay natural or manmade fixed or floating.

66. As related above, ÓPTIMA's investigation showed that the engines, transmissions, wiring, electrical apparatus and related machinery were damaged, showed lack of maintenance, was under

15

repairs or not working properly.

67. Therefore, assuming the Policy cannot be annulled for concealment and misrepresentations, the Policy does not provide and expressly excludes coverage for this loss.

## X. RESERVATION OF RIGHTS

68. ÓPTIMA hereby reserves the right to raise additional coverage defenses, i.e. additional exclusions, warranties, monetary limits, amongst others, as additional information becomes available during discovery.

**WHEREFORE,** ÓPTIMA respectfully requests a judgment from this Honorable Court declaring that no coverage is afforded under the Policy, and it is void *ab initio,* on account of Defendants breaches of the warranty of truthfulness, doctrine of *uberrima fidei* and misrepresentations, concealments and omissions. Even if the Policy is not annulled, Plaintiff requests the Court to declare there is no coverage for the Claim and related loss, pursuant to several applicable exclusions contained in the Policy.

**I HEREBY CERTIFY** that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel and parties of record.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 5th day of May, 2026.

*s/ Fernando Sabater Clavell*

16

FERNANDO SABATER CLAVELL
Bar Number: 228003
Attorneys for Plaintiff ÓPTIMA
**SALDAÑA, CARVAJAL & VÉLEZ-RIVÉ, PSC**
166 Ave. De la Constitución
San Juan, PR 00901
Tel.: (787) 289-9250
E-mail: fsabater@scvrlaw.com

17